UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROCK STRATTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OROVILLE CITY ELEMENTARY SCHOOL DISTRICT, et al.<br><br>Defendants. | No. 2:23-cv-00964-TLN-CSK<br><br>**ORDER** |

This matter is before the Court on Defendant Elizabeth Mgbam's ("Mgbam") Motion to Dismiss and Motion to Strike. (ECF No. 10.) Plaintiffs Brock Stratton ("Brock"), Nicole Stratton ("Nicole"), and C.S., a minor by and through his guardian ad litem Brock Stratton ("C.S.") (collectively, "Plaintiffs"), filed oppositions. (ECF Nos. 18, 19.) Mgbam filed a reply. (ECF No. 22.)

Also before the Court are Defendants Oroville City Elementary School District ("OCESD"), Kimberly Tyler ("Tyler"), John Bettencourt ("Bettencourt"), and Spencer Holtom's ("Holtom") (collectively, "District Defendants") Motion to Dismiss (ECF No. 11) and Motion to Strike (ECF No. 12). Both motions have been fully briefed. (ECF Nos. 17, 21, 23, 26.) For the reasons set forth below, the Court GRANTS Mgbam and District Defendants' Motions to Dismiss. (ECF Nos. 10, 11.) All other motions are DENIED as moot.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an incident at Oakdale Heights Elementary School ("Oakdale") between a young student and a teacher. (ECF No. 1 at 2.) C.S., a child with autism spectrum disorder, attended kindergarten at Oakdale where Mgbam was a special education teacher. (*Id.*; ECF No. 1-3 at 1.) For two hours each day, C.S. went to Mgbam's classroom with other special needs students for a specialized curriculum. (ECF No. 1 at 5.) Mgbam worked alongside teacher's aides in her classroom to assist her during academic instruction. (*Id.* at 5–6.)

On February 15, 2022, C.S. refused to participate in schoolwork despite multiple verbal commands to do so. (*Id.* at 6.) Instead, C.S. continued to play with toys. (*Id.*) One of the teacher's aides attempted to transition C.S. from playing with toys to writing exercises but C.S. refused and walked away. (*Id.*) The teacher's aide grabbed C.S., pulled him to a table, and gave him a two-minute break. (*Id.*) C.S.'s noncompliant behavior — disregarding verbal commands to commence his schoolwork — continued for a while before C.S., in frustration, threw one of his toys at one of the teacher's aides, hitting her in the eye. (*Id.*) Mgbam witnessed the altercation and intervened. (*Id.*)

According to Plaintiffs, Mgbam walked across the room and told C.S. "we don't do that" before taking him outside to an enclosed fence area to discipline him outside the presence of his classmates. (*Id.* at 6–7.) While outside, Plaintiffs allege Mgbam "grabbed C.S. by both wrists and held him tightly in front of her, angrily saying, less than one foot from his face, 'we don't throw things at people, listen to me, we don't do that. We need to apologize.'" (*Id.* at 7.) C.S. unsuccessfully attempted to free himself from Mgbam's grip several times, and at one point, C.S. "slipped to the ground on his buttocks area … because of the grip and momentum of Mgbam's hold." (*Id.*) Mgbam then "dragged [C.S.] up and back into the classroom." (*Id.*) Oakdale security cameras captured the incident on video, and one of the teacher's aides witnessed the interaction. (*Id.*) One of the teacher's aides contacted Plaintiffs a few minutes later to inform them about the incident, and Brock arrived at Oakdale shortly thereafter. (*Id.* at 8.) Plaintiffs allege C.S. developed redness and had scratches on his arms by the time Brock arrived, so Brock took C.S. to the police station to tell the police what happened to C.S. at school. (*Id.*) Later that

2

evening, Holtom (OCESD Superintendent) contacted Plaintiffs to talk about the incident but Plaintiffs refused to speak to him, so Holtom did not discuss the incident. (*Id.* at 3, 8).

The next day, Tyler (OCESD Special Education Director) called Plaintiffs to discuss the incident. (*Id.* at 9.) Plaintiffs voiced their concerns about C.S.'s safety and advised Tyler that C.S. would not return to school until they felt comfortable that he would be safe. (*Id.*) Tyler assured Plaintiffs that Oakdale and OCESD were taking the allegations seriously, but Plaintiffs allege District Defendants and Mgbam (collectively, "Defendants") failed to properly respond to, and timely report, the incident as required by OCESD policy and California law. (*Id.* at 10–16.) Plaintiffs further allege the California Attorney General opened an investigation into OCESD in 2019 for its purported failure to train staff on disciplinary policies and procedures in violation of California law. (*Id.* at 16–18.) The investigation purportedly revealed students with disabilities in OCESD are more likely to be reported for a disciplinary incident than their non-disabled counterparts. (*Id.*) As a result, the AG commenced an enforcement action against OCESD, resulting in a stipulated judgment that the AG is currently enforcing. (*Id.*)

On May 19, 2023, Plaintiffs filed the instant Complaint against Defendants, alleging: (1) violations of 42 U.S.C. § 1983 ("§ 1983"); (2) violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) ("ADA"); (3) violation of § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); (4) battery; (5) intentional infliction of emotional distress; (6) negligence; (7) negligent supervision; (8) violation of a mandatory duty; (9) violation of § 11135 of the California Government Code; and (10) violation of § 220 of the California Education Code. (ECF No. 1 at 21–27.)

Mgbam filed a motion to dismiss, or alternatively strike, the Complaint on August 1, 2023. (ECF No. 10.) Plaintiffs filed oppositions (ECF Nos. 18, 19), and Mgbam filed a reply (ECF No. 22).

District Defendants filed a motion to dismiss on August 1, 2023, and filed a motion to strike the next day. (ECF Nos. 11, 12.) Plaintiffs filed oppositions (ECF Nos. 17, 21), and District Defendants filed replies (ECF Nos. 23, 26).

///

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the … laws in

4

ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) … ." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* In either case, allegations or facts within matters that are properly judicially noticed or incorporated by reference become part of the complaint itself. *Id.* at 998–1003.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

Defendants move to dismiss Plaintiffs' Complaint in its entirety, arguing all ten causes of action fail as a matter of law.[1]  (ECF Nos. 10, 11.)  The Court will address each cause of action in turn.

####   A.   Incorporating the Video Surveillance Footage

As a preliminary matter, District Defendants lodge with the Court the Oakdale security camera footage, capturing the incident giving rise to this suit.  (*See* ECF Nos. 13, 16.)  Defendants request the Court consider the video in ruling on the instant motions.  (ECF No. 10-1 at 9; ECF No. 11 at 8.)

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) … ." *Khoja*, 899 F.3d at 998 (citing *Lee*, 250 F.3d at 688).  One exception to this rule is the doctrine of incorporation by reference, which "treats certain documents as though they are part of the complaint itself." *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)); *see also* Fed. R. Civ. P. 10(c).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken — or doom — their claims." *Id.*  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).  However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

///

---

[1]   Because the arguments in Defendants' motions substantially overlap, the Court addresses them together unless otherwise indicated.

6

Defendants contend the Court should consider the video in deciding the instant motions under the incorporation by reference doctrine, and that any characterizations of the incident between Mgbam and C.S. in the Complaint that contradict the video must be discarded. (ECF No. 11 at 8; ECF No. 10-1 at 10–11.) Plaintiffs do not dispute the accuracy of the video or argue the Court should not consider the video in ruling on the instant motions. Instead, Plaintiffs contend the video is not dispositive of the issue of whether Defendants violated C.S.'s constitutional rights and maintain they have sufficiently alleged a constitutional violation that Defendants can later challenge at the motion for summary judgment stage. (ECF No. 17 at 7–8; ECF No. 18 at 7.)

The Court finds it appropriate to incorporate the video surveillance footage into Plaintiffs' Complaint. Plaintiffs' allegations refer to the video several times (*see* ECF No. 1 at 7, 9, 12), and the video captures the incident between Mgbam and C.S., which forms the basis of their Complaint. *Ritchie*, 342 F.3d at 908 (a defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim). Importantly, the video does not serve to negate or contradict Plaintiffs' factual allegations. *Khoja*, 899 F.3d at 1003 (courts should not assume the truth of an incorporated document if such assumptions only serve to dispute well-pleaded facts). Rather, the video supplements the factual allegations Plaintiffs allege, providing additional context surrounding the incident. For example, Plaintiffs allege Mgbam "grabbed C.S. by both wrists and held him tightly in front of her." (ECF No. 1 at 7.) The video shows exactly that but also sheds light on how hard Mgbam grabbed C.S. and is consistent with many of Plaintiffs' other factual allegations. Moreover, Plaintiffs do not oppose the Court incorporating the video into their Complaint. They instead argue the video is not dispositive of the issue of whether Defendants violated C.S.'s constitutional rights. (ECF No. 17 at 7–8; ECF No. 18 at 7.) Even if that were true, the legal effect of the video on Plaintiffs' claims is not relevant to the propriety of incorporating the video into Plaintiffs' Complaint.

///

///

Accordingly, the Court incorporates the video surveillance footage that captures the incident between Mgbam and C.S. into Plaintiffs' Complaint. Fed. R. Civ. P. 10(c); *Raudelunas v. City of Vallejo*, No. 221CV00394KJMJDP, 2022 WL 329200, at *1 (E.D. Cal. Feb. 3, 2022) (incorporating video footage that was lodged with the court into the complaint); *Boyman v. Disney Enters., Inc.*, No. CV 17-8827-DMG (JEM), 2018 WL 5094902, at *2 n.3 (C.D. Cal. June 1, 2018) (same).

### B. Section 1983 Claim

Plaintiffs' first cause of action under § 1983 appears to allege separate claims under the Fourth and Fourteenth Amendments. (ECF No. 1 at 21.) The Court will first address Plaintiffs' Fourth Amendment claim before turning to Plaintiffs' Fourteenth Amendment claims.

#### 1. Fourth Amendment Claim

##### a. Mgbam

Plaintiffs allege Mgbam violated C.S.'s Fourth Amendment rights by "utilizing unjustified and unreasonable force against and restraining [him]." (ECF No. 1 at 21.)

"The consequences of a teacher's force against a student at school are generally analyzed under the 'reasonableness' rubric of the Fourth Amendment … ." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1180 (9th Cir. 2007) (quoting *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 908–09 (9th Cir. 2003)). The Fourth Amendment's reasonableness rubric balances the rights of schoolchildren with the substantial need for teachers and administrators to have the freedom to maintain order in their schools. *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985); *Doe*, 334 F.3d at 909 (reasonableness of seizure must be considered in light of the educational objectives). The more attenuated the force used is to legitimate educational or administrative objectives, the more likely that force is unreasonable. *See Preschooler II*, 479 F.3d at 1180–81; *Doe*, 334 F.3d at 909–10. Whether allegations of force rise to the level of a Fourth Amendment violation is a question for the court, *Preschooler II*, 479 F.3d at 1180, and the reasonableness of the alleged force is analyzed under the totality of the circumstances, *Doe*, 334 F.3d at 909.

///

1    Mgbam contends Plaintiffs' Fourth Amendment claim against her must be dismissed
2    because: (1) Brock and Nicole — C.S.'s parents — do not allege any force was directed toward
3    them, and they cannot assert C.S.'s Fourth Amendment rights; and (2) the facts alleged do not
4    give rise to a plausible inference of a constitutional violation based on excessive force. (ECF No.
5    10-1 at 11–12.)  In opposition, Plaintiffs argue their factual allegations that C.S. was generally a
6    well-behaved, fun-loving five-year-old when Mgbam restrained him "are sufficient to show that
7    Plaintiffs have met their burden of proof, at least with respect to this early stage of pleading, to
8    demonstrate facts to support a violation of [§ 1983]." (ECF No. 18 at 9.)  Plaintiffs do not
9    address Mgbam's argument that Brock and Nicole do not allege any force was directed toward
10   them or that they may not assert C.S.'s Fourth Amendment rights.

11   The Court agrees with Mgbam and finds Plaintiffs have failed to state a Fourth
12   Amendment violation.  First, because Plaintiffs do not address Mgbam's argument that Brock and
13   Nicole do not allege any force was directed toward them or that they may not assert C.S.'s Fourth
14   Amendment rights, Plaintiffs have abandoned any Fourth Amendment claim on behalf of Brock
15   and Nicole.  *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff
16   abandoned claim by not raising it in opposition to motion).  Second, the conduct directed toward
17   C.S., as alleged, does not rise to the level of a Fourth Amendment violation.  Plaintiffs allege
18   Mgbam "grabbed C.S. by the arm and dragged him outside" and maintained a hold of C.S.'s
19   wrists while he, in frustration, attempted to break free from Mgbam's hold.  (ECF No. 1 at 6–7.)
20   The video of the incident, now incorporated into Plaintiffs' Complaint, shows how hard Mgbam
21   "dragged" C.S. outside and subsequently applied force against C.S.  Mgbam's grip, while
22   allegedly firm, is a far cry from the type of conduct sufficient to implicate the Fourth Amendment
23   in a school setting.  *See, e.g.*, *Preschooler II*, 479 F.3d at 1180–81 (beating, slapping, and body
24   slamming a disabled four-year-old sufficiently stated a Fourth Amendment violation); *Doe*, 334
25   F.3d at 909–10 (taping a second-grade student's head to a tree for an extended period of time
26   sufficiently stated a Fourth Amendment violation).  Moreover, Plaintiffs concede Mgbam
27   allegedly restrained C.S. to discipline him for throwing a toy at a teacher's aide's eye.  (ECF No.
28   1 at 6; ECF No. 18 at 9.)  Thus, there was a legitimate administrative and educational purpose for

the alleged restraint, and Plaintiffs have failed to demonstrate the force used was disproportionate to achieve that objective. *See T.L.O.*, 469 U.S. at 341 (rights of schoolchildren must be balanced with the need to maintain order); *Doe*, 334 F.3d at 909 (reasonableness of seizure must be considered in light of the educational objectives); *c.f. Wagon v. Rocklin Unified Sch. Dist.*, No. 217CV01666TLNKJN, 2019 WL 2577336, at *3 (E.D. Cal. June 24, 2019) (denying motion to dismiss where plaintiff alleged bus driver forcefully shoved a child with cerebral palsy while the child was wearing a seatbelt and there was no apparent educational or administrative reason for using force).

Accordingly, while the Court has doubts as to whether Plaintiffs can sufficiently amend their Fourth Amendment claim, the Court GRANTS Mgbam's motion to dismiss Plaintiffs' Fourth Amendment claim with leave to amend.

### b. *Tyler, Bettencourt, and Holtom*

Plaintiffs allege Tyler, Bettencourt, and Holtom violated C.S.'s Fourth Amendment rights by "acting with deliberate indifference to the risk of harm to C.S. from Mgbam" and failing "to act in response to allegations of child abuse." (ECF No. 1 at 21.) However, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Because the Court determined Plaintiffs failed to state a Fourth Amendment claim against Mgbam, Plaintiffs' supervisory liability claim against Tyler, Bettencourt, and Holtom is not sustainable. *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (supervisory claim is not sustainable where there is no underlying constitutional violation by a subordinate employee).

Accordingly, the Court GRANTS District Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim with leave to amend.

### 2. Fourteenth Amendment Claim

#### a. *Equal Protection*

Plaintiffs allege Mgbam, Tyler, Bettencourt, and Holtom violated C.S.'s "rights under the Equal Protection Clause of the Fourteenth Amendment … by actions, including but not limited to,

10

depriving [C.S.] of equal protection under the law on the basis of disability." (ECF No. 1 at 21.)

"To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).

Defendants contend Plaintiffs' equal protection claim fails because Plaintiffs' allegations are too conclusory, and Plaintiffs fail to allege Defendants intentionally discriminated against C.S. based on his disability. (ECF No. 10-1 at 13; ECF No. 11 at 11.) In opposition, Plaintiffs argue Tyler, Bettencourt, and Holtom "were fully aware of OCESD's propensity to discriminate against students with disabilities by virtue of the DOJ case filed against OCESD" and "other students were aware that Mgbam did not like C.S. and that Mgbam yells at C.S." (ECF No. 17 at 12.) Plaintiffs do not specifically address Mgbam's equal protection arguments.

The Court agrees with Defendants and finds Plaintiffs have failed to state an equal protection claim. Plaintiffs' Complaint is devoid of any factual allegations indicating Defendants intentionally discriminated against C.S. because he has autism. Importantly, the Complaint does not even clearly identify the conduct by Defendants which forms the basis of the alleged discrimination, or how that conduct is unconstitutional. While Plaintiffs reference an unrelated civil enforcement action by the California Attorney General, which allegedly found students in OCESD with disabilities were treated differently than their non-disabled counterparts (ECF No. 1 at 16–18), Plaintiffs fail to demonstrate how that enforcement action — commenced several years prior to the incident in question — is related to Defendants' purported unconstitutional conduct. Moreover, Plaintiffs abandoned their equal protection claim against Mgbam by not raising the issue in their opposition. *Jenkins*, 398 F.3d at 1095 n.4 (plaintiff abandoned claim by not raising it in opposition to motion).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' equal protection claim with leave to amend.

///

///

                      *b.*       *Due Process*

Plaintiffs next allege Mgbam, Tyler, Bettencourt, and Holtom violated their rights under the Due Process Clause by: (1) intentionally interfering with the parent-child relationship by concealing information regarding the physical and emotional trauma inflicted on C.S. by Mgbam; and (2) intentionally interfering with Plaintiffs' right to provide and receive nurture, support, and comfort regarding a highly traumatic event. (ECF No. 1 at 21.)

"It is long-settled that custodial parents have a liberty interest in the 'companionship, care, custody, and management' of their children." *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). "The state's interference with that liberty interest without due process of law is remediable under section 1983." *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Thus, to state a cognizable § 1983 claim, a plaintiff must show a deprivation of a protected liberty interest. *Brittain*, 451 F.3d at 992.

Defendants contend Plaintiffs' due process claim fails because, among other things, Plaintiffs have failed to allege a deprivation of a cognizable liberty interest. (ECF No. 10-1 at 13–14; ECF No. 11 at 12.) Plaintiffs do not specifically address this argument — and do not address Mgbam's arguments at all — but argue "Defendants' continued characterizations of Mgbam's illegal seizure that caused redness, scratches, and bruising should be ignored and Defendants' [motion to dismiss] the [§ 1983] claim should be denied." (ECF No. 17 at 13.)

The Court agrees with Defendants and finds Plaintiffs have failed to state a due process claim. Plaintiffs again fail to address Defendants' arguments made in their motions to dismiss. Plaintiffs' opposition to District Defendants' motion to dismiss focuses on Mgbam's alleged unconstitutional seizure rather than the alleged interference with any protected liberty interest under the Due Process Clause (ECF No. 17 at 13), and Plaintiffs' opposition to Mgbam's motion to dismiss does not discuss their due process claim at all. Thus, Plaintiffs' have abandoned their due process claim against Defendants. *Jenkins*, 398 F.3d at 1095 n.4 (plaintiff abandoned claim by not raising it in opposition to motion).

///

In any event, Plaintiffs fail to allege a deprivation of a cognizable liberty interest. "Although the Ninth Circuit has recognized a Fourteenth Amendment 'due process' right flowing from the parent-child relationship, such a right is only considered impaired in situations such as the death of a child, the loss of parental rights, or the loss of contact or custody with the child." *E.H. v. Brentwood Union Sch. Dist.*, No. C13-3243 TEH, 2013 WL 5978008, at *2 (N.D. Cal. Nov. 4, 2013) (citing *Kelson*, 767 F.2d at 654–55). Because Plaintiffs do not allege Defendants' interference with their parental rights resulted in the death of a child, the loss of parental rights, the loss of contact or custody with the child, or anything remotely close, Plaintiffs have failed to state a due process claim under the Fourteenth Amendment. *Id.*; *see also Martin for C.M. v. Hermiston Sch. Dist. 8R*, 499 F. Supp. 3d 813, 836–37 (D. Or. 2020) (collecting cases).

Accordingly, the Court GRANTS Defendants' motions to dismiss Plaintiffs' due process claim with leave to amend.[2]

### C.   ADA and Rehabilitation Act Claims

Plaintiffs' second cause of action is an ADA claim against OCESD. Plaintiffs allege OCESD failed in its responsibilities under the ADA to provide services, programs, and activities in a full and equal manner to disabled persons by failing to ensure educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability. (ECF No. 1 at 22.) Specifically, Plaintiffs allege "Tyler, Bettencourt, and Holtom were deliberately indifferent to the complaint of abuse committed by Mgbam" and "[t]his deliberate indifference by [them] gives rise to respondeat superior liability of OCESD." (*Id.*)

Plaintiffs' third cause of action is a Rehabilitation Act claim against OCESD. Plaintiffs allege OCESD receives federal financial assistance and violated C.S.'s rights under the Rehabilitation Act by "denying [him] equal access to educational services and by subjecting C.S. to a hostile educational environment … ." (*Id.* at 23.)

---

[2] Because the Court dismisses all of Plaintiffs' § 1983 claims, the Court declines to address Defendants' qualified immunity arguments. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.").

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim of disability discrimination under the ADA, a plaintiff must allege:

> (1) he is an individual with a disability;
>
> (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;
>
> (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
>
> (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)). The requirements to state a claim under the Rehabilitation Act are the same, "except that the plaintiff must also prove that the relevant program receives federal financial assistance." *Id.*

District Defendants principally contend Plaintiffs fail to satisfy the fourth prong. (ECF No. 11 at 15–16.) Specifically, District Defendants argue C.S. is the only individual alleged to have a disability, but no OCESD employee is alleged to have acted or discriminated against C.S. by reason of his disability. (*Id.*) In opposition, Plaintiffs contend the Complaint "specifically alleges that Defendants failed to provide C.S. with the reasonable accommodation in the form of behavior supports that he needed to enjoy meaningful access to the benefits of a public education" and that "Mgbam's actions were motivated by an obvious animus toward C.S. as a disabled individual … ." (ECF No. 17 at 14.) In support of their argument, Plaintiffs cite paragraphs 18 and 56 through 58 of the Complaint. Those paragraphs read, in pertinent part, as follows:

> C.S. was assigned a certified ABA provider through CARD in Yuba City, California. First Kristie Eggers and later Marilyn Artinian ("Artinian"), both of whom are Board Certified Behavior Analysts ("BCBA") were assigned as C.S.'s Clinical Supervisors beginning in 2019. As part of C.S.'s education, Artinian supervises

14

> behavior technicians, or ABA aides, that work with C.S. directly in the classroom. Artinian prepared behavioral intervention strategies that, similar to OCESD policies and procedures, are recommended to solicit positive behaviors from C.S. CARD provided intervention strategies to OCESD staff to address behavioral challenges, such as noncompliance. However, OCESD staff often refused to implement the recommended strategies.
>
> MGBAM, in the BER, admits she restrained C.S. because, according to MGBAM and in an attempt to justify her illegal behavior, she represented that he threw a toy "very hard at [the teacher's aide's] face and hit her in the eye." 4 MGBAM crossed the room, grabbed his arm, and dragged him outside. In the BER, MGBAM stated "The teacher took him by the wrist and escorted him outside to counsel him." He posed no imminent threat to himself or others. Moreover, MGBAM, who then sat on the bench to pull C.S. around so she could discipline C.S., tightened her grip, which caused red marks and bruises on a five-year-old boy who was in a self-enclosed gated area.

(ECF No. 1 at ¶¶ 18, 58.[3])

The Court agrees with District Defendants and finds Plaintiffs have failed to state ADA and Rehabilitation Act claims. Contrary to Plaintiffs' assertion, paragraph 18 and paragraphs 56 through 58 (substantially reproduced above) do not allege any OCESD employee discriminated against C.S. by reason of C.S.'s autism. While Plaintiffs elsewhere allege "Mgbam's actions were motivated by an obvious animus toward the disabled minor C.S." (*id.* at ¶¶ 92, 123), these allegations only demonstrate: (1) Mgbam had ill will toward C.S.; (2) Mgbam's actions were motivated by her ill will toward C.S.; and (3) C.S. has a disability. It does not necessarily follow that Mgbam's actions were motivated *by reason of* C.S.'s disability, which Plaintiffs must still allege. *See, e.g.*, *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013) (under the ADA, a plaintiff must show that discrimination based on disability was a *motivating factor* for action taken; under the Rehabilitation Act, a plaintiff must show that discrimination based on disability was the *sole reason* for action taken); *J.R. by & Through Ringer v. Lakeport Unified Sch. Dist.*, No. C 18-06211 WHA, 2018 WL 6726999, at *3 (N.D. Cal. Dec. 21, 2018) (dismissing ADA and Rehabilitation Act claims for failure to allege denial of

---

[3] Paragraphs 56 and 57 purport to quote from various California statutes and do not contain any independent allegations, and therefore, the Court does not reproduce them here.

benefits or services was by reason of disability); *Pagan v. Brown*, No. 9:08CV0724LEKGJD, 2009 WL 2581572, at *11 (N.D.N.Y. Aug. 19, 2009) ("Plaintiff simply claims that he is blind, but has not alleged any facts that associate his disability with the actions of any of the defendants. The fact that plaintiff may be disabled, and that he alleges that he was subject to abuse, simply does not constitute a discrimination claim under the ADA or the Rehabilitation Act."). This is particularly true where, as here, Plaintiffs concede Mgbam allegedly restrained C.S. to discipline him for throwing a toy at a teacher's aide's eye (ECF No. 1 at 6; ECF No. 18 at 9), not because he has autism.

Accordingly, the Court GRANTS District Defendants' motion to dismiss Plaintiffs' ADA and Rehabilitation Act claims with leave to amend.

D.   State-Law Claims

Plaintiffs' remaining causes of action arise under California law. Defendants move to dismiss these causes of action for failure to comply with the California Tort Claims Act, among other things. (ECF No. 10-1 at 18–26; ECF No. 11 at 17–24.) However, because this matter is before the Court based on federal question jurisdiction and all federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. 28 U.S.C. § 1367(c)(3); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (affirming district court's declination to exercise supplemental jurisdiction over remaining state-law claims where all federal claims have been dismissed).

Accordingly, the Court DISMISSES Plaintiffs' fourth cause of action for battery, fifth cause of action for intentional infliction of emotional distress, sixth cause of action for negligence, seventh cause of action for negligent supervision, eighth cause of action for a violation of a mandatory duty, ninth cause of action for a violation of § 11135 of the California Government Code, and tenth cause of action for a violation of § 220 of the California Education Code without prejudice to bringing these claims in state court.

///

///

///

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss (ECF Nos. 10, 11) and DISMISSES Plaintiffs' Complaint with leave to amend.  The Court DENIES as moot all other motions.  (ECF No. 10 [motion to strike]; ECF No. 12.)  Any amended complaint shall be filed and served not later than thirty (30) days from the electronic filing date of this Order.  Defendants shall file any responsive pleading not later than twenty-one (21) days from the filing and service of any amended complaint.  If Plaintiffs do not file an amended complaint, the Court will dismiss the action and close the case.

IT IS SO ORDERED.

Date: May 15, 2024

Troy L. Nunley
United States District Judge