1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   BROCK STRATTON, ET AL.,

12          Plaintiffs,                      No. 2:23-cv-00964-TLN-CSK

13

14          v.                              **ORDER**

15   OROVILLE CITY ELEMENTARY
     SCHOOL DISTRICT, et al.,
16
            Defendants.
17

18

19          This matter is before the Court on Defendant Elizabeth Mgbam's ("Mgbam") Motion to

20   Dismiss and Defendants Oroville City Elementary School District ("District"), Kimberly Tyler

21   ("Tyler"), John Bettencourt ("Bettencourt"), and Spencer Holtom's ("Holtom") (collectively,

22   "Defendants") Motion to Dismiss.  (ECF Nos. 34, 35.)  Both motions are fully briefed.  (ECF

23   Nos. 36, 38, 45, 46.)  As described below, the Court GRANTS in part and DENIES in part

24   Mgbam's Motion and the District, Tyler, Bettencourt, and Holtom's (collectively "District and

25   Officials") Motion.

26

27

28
                                              1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

C.S., a child with autism spectrum disorder, previously attended Oakdale Heights Elementary School.  (ECF No. 30 ¶ 12.)  C.S. had a Behavior Intervention Plan ("BIP") which detailed specific target behavior response accommodations to be implemented by staff interacting with C.S.  (*Id.* ¶ 13.)  Each day, C.S. spent two hours in a classroom with Mgbam, his special education teacher at the time.  (*Id.* ¶ 20.)  Teaching aides assisted Mgbam in her classroom.  (*Id.* ¶ 24.)

On February 15, 2022, Plaintiffs allege Mgbam inappropriately restrained and failed to implement the necessary behavior accommodations outlined in C.S.'s BIP.  (*Id.* ¶ 14, 22–23.)  Prior to the incident, C.S. was at a table playing with toy animals.  (*Id.* ¶ 24.)  When a teacher's aide demanded C.S. move to reading a book, C.S. said "no."  (*Id.*)  C.S. was then given a behavior accommodation listed in his BIP, which led to C.S.'s compliance.  (*Id.*)  After C.S. read the book, the teacher's aide then tried to transition C.S. to a writing task.  (*Id.*)  C.S. again said "no" and started to walk away.  (*Id.*)  The teacher's aide grabbed C.S. and pulled him back to the table.  (*Id.*)  C.S. continued to remain noncompliant and eventually threw one of his toys at the aide in frustration and hit her in the eye.  (*Id.*)

Mgbam witnessed this occur and stated "we don't do that" before grabbing C.S. by the arm and forcing him to walk outside the classroom into a fully enclosed fenced area.  (*Id.* ¶ 25.)  C.S. tried to pull away, and in response Mgbam increased her pressure on his wrist.  (*Id.* ¶ 26.)  Outside, Mgbam held C.S.'s arms by his side, keeping a tight grip on both of his wrists and reprimanded him at eye level.  (*Id.* ¶ 27.)  In an "angry tone" Mgbam told C.S. "[w]e don't throw things at people, listen to me, we don't do that. We need to apologize."  (*Id.*)  C.S. attempted to free himself from Mgbam's grip several times, but Mgbam increased her grip.  (*Id.* ¶¶ 29–30.)  This caused "instant red marks and scratches, and later caused bruising."  (*Id.* ¶ 30.)  At one point, C.S. slipped to the ground on his buttocks area but Mgbam continued to grip C.S. causing him to twist and turn and causing his arm to "appear[] to hyperextend[.]"  (*Id.*)  Despite this, Mgbam "continued to hold onto his wrists" and "tighten[ed] her grip."  (*Id.*)  Mgbam then pulled C.S. off the ground and dragged him back into the classroom.  (*Id.*)  The entire incident lasted

1  approximately two minutes.  (*Id.*)  In the classroom, C.S. was crying and upset so an aide took

2  him out of the classroom.  (*Id.* ¶ 31.)

3      Shortly thereafter, an aide contacted C.S.'s parents — Brock Stratton and Nicole Stratton

4  (collectively, "C.S.'s parents").  (*Id.* ¶ 32.)  When Brock Stratton arrived at the school and saw

5  the redness and scratching on C.S.'s arms, he took C.S. to the police station.  (*Id.* ¶¶ 32–33.)  That

6  evening, Holtom, the District's superintendent, contacted C.S.'s parents.  (*Id.* ¶ 34.)  Holtom

7  asked C.S.'s parents to describe what "may or may not" have happened.  (*Id.*)

8      The next day, Tyler, the District's Special Education Director, contacted C.S.'s parents to

9  discuss the incident.  (*Id.* ¶ 35.)  C.S.'s parents expressed concern about C.S.'s safety and told

10  Tyler they would not return C.S. to school until they knew he would be safe.  (*Id.*)  For the first

11  time since C.S. started school, C.S. became visibly upset when asked about "school."  (*Id.*)  C.S.'s

12  parents put him in counseling where he was visibly shaken every time he saw a picture of a

13  school bus or school was mentioned.  (*Id.* ¶ 36.)  This was followed by sleepless nights.  (*Id.*)

14  Eventually, after counseling and parental support, C.S. was able to return to a different school

15  within the District the following school year.  (*Id.*)

16      Plaintiffs further allege the District had notice its staff had a history of failing to

17  implement appropriate behavior support accommodations for students with disabilities.  (*Id.* ¶¶

18  42–44.)  Specifically, Plaintiffs allege the District settled a complaint with the Justice Department

19  regarding excessive disciplinary actions against students with disabilities in 2020.  (*Id.* ¶ 42.)

20  Additionally, a week before the February 14, 2022, incident, an Individualized Education

21  Program ("IEP") meeting was held to discuss C.S.'s executive functioning needs.  (*Id.* ¶ 44.)

22  During the meeting, Mgbam stated she did not agree with certain ways C.S.'s behavior

23  accommodations were being implemented.  (*Id.*)  Plaintiffs allege this should have been a "red

24  flag" to Tyler who was present during the meeting.  (*Id.*)

25      On May 19, 2023, Plaintiffs filed the initial Complaint in this action.  (ECF No. 1.)  On

26  June 14, 2024, Plaintiffs filed the operative First Amended Complaint ("FAC").  (ECF No. 30.)

27  C.S. alleges the following claims: a 42 U.S.C. § 1983 ("§ 1983") claim for excessive force in

28  violation of the Fourth Amendment against Defendants Mgbam, Tyler and the District (Claim

3

One); violation of Title II of the Americans with Disabilities Act ("ADA") against the District (Claim Two); violation of § 504 of the Rehabilitation Act ("Rehabilitation Act") against the District (Claim Three); and battery against Mgbam (Claim Four).  Plaintiffs also collectively allege: negligence against all Defendants (Claim Five); negligent supervision against all Defendants (Claim Six); and violation of California Government Code § 11135 against the District (Claim Seven).  (ECF No. 30 ¶¶ 48–88.)

On July 26, 2024, Mgbam filed a motion to dismiss.  (ECF No. 34.)  Plaintiffs filed an opposition, and Mgbam replied.  (ECF Nos. 36, 45.)  The District and Officials also filed a motion to dismiss on July 27, 2024.  (ECF No. 35.)  This motion is also fully briefed.  (ECF Nos. 38, 46.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

1   factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

2   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

3   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

4   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

5   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

6   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

7   statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

8   are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355,

9   F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

10  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

11  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

12  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

13         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

14  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

15  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

16  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

17  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

18  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

19  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

20  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

21  her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

22  dismissed. *Id.* at 680 (internal quotations omitted).

23         If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

24  amend even if no request to amend the pleading was made, unless it determines that the pleading

25  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

26  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

27  *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

28  denying leave to amend when amendment would be futile).  Although a district court should

5

1    freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

2    deny such leave is 'particularly broad' where the plaintiff has previously amended its

3    complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

4    2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

5        **III.    ANALYSIS**

6            A.    Extrinsic Evidence

7        At the outset, Defendants request this Court again consider video surveillance footage of

8    the incident, which Plaintiffs refer to in the FAC.  (ECF No. 34-1 at 11; ECF No. 35 at 10.)

9    Additionally, Defendants request the Court consider C.S.'s IEP and BIP documents.  (ECF No.

10    34-1 at 12; ECF No. 35 at 11.)

11        As this Court noted previously, "[g]enerally, district courts may not consider material

12    outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]"

13    *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los

14    Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  One exception to this rule is the incorporation-by-

15    reference doctrine, which "treats certain documents as though they are part of the complaint

16    itself." *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute

17    on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th

18    Cir. 2006)); *see also* Fed. R. Civ. P. 10(c).  "The doctrine prevents plaintiffs from selecting only

19    portions of documents that support their claims, while omitting portions of those very documents

20    that weaken — or doom — their claims." *Id.*  "Even if a document is not attached to a complaint,

21    it may be incorporated by reference into a complaint if the plaintiff refers extensively to the

22    document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342

23    F.3d 903, 908 (9th Cir. 2003) (citations omitted).  However, "it is improper to assume the truth of

24    an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded

25    complaint." *Khoja*, 899 F.3d at 1003.  Applying these standards, the Court evaluates whether to

26    consider each piece of evidence in turn.

27            i.    *Video Surveillance Footage*

28        This Court previously found it appropriate to incorporate the video surveillance into

6

1    Plaintiffs' Complaint because Plaintiffs' allegations referred to the video several times and the

2    video did not negate or contradict Plaintiffs' factual allegations.  (ECF No. 29 at 7.)  Despite this,

3    Plaintiffs now oppose the incorporation of the video into the FAC.  (ECF No. 36 at 8–10; ECF

4    No. 38 at 9–12.)  Plaintiffs do not dispute the video's accuracy, but instead argue the video is "not

5    referred to extensively" in the FAC, does not form the basis of Plaintiffs' claim, and should not be

6    used to resolve factual disputes.  (ECF No. 36 at 9; ECF No. 38 at 9.)

7         In *Ritchie*, the Ninth Circuit held a document can be incorporated into a complaint if a

8    plaintiff refers to the document "extensively."  342 F.3d at 907.  "[T]he mere mention of the

9    existence of a document" is not enough.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

10   Cir. 2010) (internal citation omitted); *see also Khoja*, 899 F.3d at 1002.  In the FAC, there is more

11   than just a "mere mention" of the video.  (ECF No. 30 ¶¶ 28, 35.)  Specifically, Plaintiffs

12   allegations in the FAC rely on the video to support their assertion that C.S. was not a danger to

13   himself or anyone else during the incident and Mgbam failed to follow C.S.'s BIP by physically

14   restraining C.S.  (*Id.* ¶ 28.)  Accordingly, because Plaintiffs reference and explicitly rely on the

15   video footage in the FAC, the Court incorporates the video by reference.

16        However, "what inferences a court may draw from an incorporated document should also

17   be approached with caution[,]" given "it is improper to assume the truth of an incorporated

18   document if such assumptions only serve to dispute facts in a well-pleaded complaint."  *Khoja*,

19   899 F.3d at 1003.  Therefore, in incorporating the video surveillance footage, the Court does not

20   accept Defendants' interpretation of the video, but instead takes Plaintiffs' allegations as true and

21   construes all reasonable inferences in Plaintiffs favor.  *See, e.g.*, *C.B. v. Moreno Valley Unified*

22   *Sch. Dist.*, 544 F. Supp. 3d 973, 989 (C.D. Cal. 2021) (finding similarly).

23             *ii.*    *IEP and BIP*

24        Defendants also seek to incorporate by reference C.S.'s IEP and BIP.  (ECF No. 34 at 11;

25   ECF No. 35 at 11.)  According to Defendants, the documents demonstrate that at the time of the

26   incident, C.S. did not have a BIP in place and therefore all allegations regarding the BIP are

27   "patently false."  (ECF No. 34 at 10; ECF No. 35 at 11.)  In opposition, Plaintiffs dispute the

28   authenticity of the documents and argue the documents contain inadmissible hearsay.  (ECF No.

1    36 at 10.)  Further, Plaintiffs contend that even if the Court could consider the documents, the
2    only conclusion to be drawn is that C.S.'s BIP was not mentioned in the IEP nor attached to it.
3    (*Id.* at 11.)  Finally, Plaintiffs argue extrinsic evidence should not be allowed to contradict facts
4    and inferences from the FAC.  (*Id.*)

5         In *Khoja*, the Ninth Circuit reiterated that generally, "a court 'may assume [an
6    incorporated document's] contents are true for purposes of a motion to dismiss under Rule
7    12(b)(6).'"  899 F.3d at 988.  Given this, the Court finds Plaintiffs' hearsay argument unavailing.
8    *See also Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1119 n.3 (C.D. Cal. 2024)
9    (finding similarly).  However, as discussed above, the Ninth Circuit has also observed that "it is
10   improper to assume the truth of an incorporated document if such assumptions only serve to
11   dispute facts stated in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1003.  Here, the parties
12   disagree as to whether the documents accurately reflect the plans in place for C.S. at the time of
13   the incident.  (ECF No. 34-1 at 12; ECF No. 36 at 11.)  Accordingly, the Court incorporates the
14   documents but declines to accept their contents demonstrate there was no BIP in place for C.S. at
15   the time of the incident.  *See, e.g.*, *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 n.1
16   (9th Cir. 2008).

17              B.    Mgbam's Motion to Dismiss

18        Mgbam moves to dismiss each of the claims against her — (1) the § 1983 excessive force
19   claim, and (2) the state law claims.  (ECF No. 34.)  Mgbam also argues Plaintiffs fail to allege
20   facts to warrant a punitive damages award.  (*Id.*)  The Court analyzes these arguments in turn.

21                    *i.    Section 1983 Claim against Mgbam*

22        Section 1983 allows individuals to bring a cause of action for violations of their federal
23   rights by a person acting under the color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 639 (1980)
24   (internal citation omitted).  C.S.'s § 1983 claim is based on excessive force under the Fourth
25   Amendment.  Specifically, C.S. alleges Mgbam violated the Fourth Amendment by "utilizing
26   physical force against C.S. that was unreasonable under the circumstances given C.S.'s age,
27   disability status, the BIP in place for C.S." as well as other facts surrounding the incident.  (ECF
28   No. 30 ¶ 50.)

"The consequences of a teacher's force against a student at school are generally analyzed under the 'reasonableness' rubric of the Fourth Amendment[.]" *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1180 (9th Cir. 2007). "Reasonableness" is assessed "in light of the age and sex of the student and the nature of the infraction." *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985)). "Even minor uses of force may be unreasonable where the circumstances do not warrant the use of any force." *C.B. v. Sonora Sch. Dist.*, No. 1:09-CV-00285-OWW, 2011 WL 532404, at *8 (E.D. Cal. Feb. 11, 2011).

Mgbam argues this claim must be dismissed against her because (1) the facts alleged still do not give rise to a plausible inference of a constitutional violation based on excessive force, and (2) she is entitled to qualified immunity. (ECF No. 34 at 11–16.) The Court addresses these arguments in turn.

### a)    Excessive Force

Just as they did in the original Complaint, Plaintiffs allege in the FAC that after C.S. threw a toy hitting a teacher's aide in the eye, Mgbam violated C.S.'s rights under the Fourth Amendment by utilizing unreasonable physical force. (ECF No. 30 ¶¶ 24, 50.) Specifically, Plaintiffs allege Mgbam spoke to C.S. in an "angry tone" and "used physical force to cause C.S. to walk outside with her against his will[,]" (ECF No. 30 ¶ 25), into an enclosed-gated area (*id.* ¶ 27). When C.S. tried to pull away, Mgbam allegedly "increased" the force of her grip, (*id.* ¶ 26), which left "instant red marks and scratches, and later caused bruising." (*Id.* ¶ 30.) When C.S. fell to the floor, Mgbam "grabbed him even harder, causing C.S. to twist and turn" and causing his arm to "appear[] to hyperextend[.]" (*Id.*) Despite this, Mgbam "continued to hold onto his wrists" and "tighten[ed] her grip." (*Id.*)

Unlike the original Complaint, in the First Amended Complaint, Plaintiffs now also allege Mgbam's actions went against C.S.'s specific behavior response accommodations outlined in his BIP. (*Id.* ¶¶ 13, 28.) According to Plaintiffs, C.S.'s BIP "required school staff to 'act as though the behavior did not occur'" and "not physically restrain [C.S.]" (*Id.*) In its prior order, the Court granted Mgbam's motion to dismiss C.S.'s excessive force claim finding that the facts alleged did

9

1   not establish the type of conduct sufficient to implicate the Fourth Amendment in a school

2   setting.  (ECF No. 29 at 9.)  In Mgbam's instant motion to dismiss, she argues these new

3   allegations do not change the outcome because contrary to Plaintiffs' allegations, there was no

4   BIP in place for C.S. at the time of the incident.  (ECF No. 34-1 at 12.)  Even if there was a BIP

5   for C.S. at the time, Mgbam argues that does not change the law regarding what constitutes

6   excessive force.  (*Id.* at 13.)

7          While the changes to the FAC are minimal, the Court finds them sufficient to push the

8   allegations "across the line from conceivable to plausible[.]"  *See Iqbal*, 566 U.S. at 680.  First, as

9   described above, the incorporated documents do not establish at this stage that there was no BIP

10  in place for C.S. at the time of the incident.  Additionally, when evaluating whether the force was

11  "reasonable" the Court looks not only to the age and sex of the student, but also to the

12  circumstances surrounding the incident.  *See Sonora Sch. Dist.*, 2011 WL 532404, at *8.  Now,

13  the allegations include that not only does C.S. have autism spectrum disorder and was only five

14  years old at the time of the incident, but also that there were specific behavior response

15  accommodations in place requiring staff to "not physically restrain [C.S.]."  While only slight

16  changes, the Court finds that at this procedural stage, C.S. has sufficiently plead a plausible

17  excessive force claim against Mgbam.  *See, e.g.*, *Wagon v. Rocklin Unified Sch. Dist.*, No. 2:17-

18  CV-01666-TLN-KJN, 2019 WL 2577336, at *3 (E.D. Cal. June 24, 2019) (denying motion to

19  dismiss where plaintiff alleged bus driver forcefully shoved a child with cerebral palsy while the

20  child was wearing a seatbelt); *cf. E.H. v. Brentwood Union Sch. Dist.*, No. C13-3243-TEH, 2013

21  WL 5978008, at *3 (N.D. Cal. Nov. 4, 2013) (denying motion to dismiss where Plaintiff alleged

22  he was physically restrained, dragged, and grabbed using "non-certified interventions," and

23  received deep scratches).

24                          *b)      Qualified Immunity*

25          In the alternative, Mgbam argues she is entitled to qualified immunity.  (ECF No. 34-1 at

26  14.)  In opposition, Plaintiffs argue the allegations demonstrate there was no need for force and

27  therefore Mgbam is not entitled to qualified immunity.  (ECF No. 36 at 13–14.)

28  / / /

To determine whether a school official, such as Mgbam, is entitled to qualified immunity, the Court addresses two questions.  First, "whether taken in the light most favorable to the party asserting the inquiry, that party has established a violation of a federal right."  *Preschooler II*, 479 F.3d at 1179 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Second, whether the school official's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (citation omitted).  While the Supreme Court has clarified that a district court is not required to answer these questions in order, the Court finds this sequencing beneficial in the instant case.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (noting it may be difficult to begin and end by analyzing the "clearly established prong" because it can be "difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be" (citation omitted)).

Here, as discussed above, C.S. has plausibly alleged Mgbam's actions constituted excessive force in violation of the Fourth Amendment.  Thus, the Court finds C.S. has sufficiently alleged a violation of a federal right.  Additionally, the Court finds the right to be free from excessive force was clearly established at the time of the incident.  *See, e.g.*, *Preschooler II*, 479 F.3d at 1183; *Vasquez by & through Garcia v. Richland Sch. Dist.*, No. 1:19-CV-00327-LJO-JLT, 2019 WL 3564483, at *5 (E.D. Cal. Aug. 6, 2019).  Therefore, C.S.'s allegations are sufficient at this time to defeat Mgbam's argument that she is entitled to qualified immunity.

In sum, the motion to dismiss the § 1983 claim against Mgbam (Claim One) is DENIED.

### ii.    State Law Claims

Plaintiffs also allege Mgbam is liable for negligence and negligent supervision.  (ECF No. 30 ¶¶ 65–74.)  C.S. further alleges Mgbam is liable for battery.  (*Id.*)  At the outset, Mgbam argues: (1) the Court did not give Plaintiffs leave to amend these state law claims; and (2) Plaintiffs' state law claims should be dismissed because Plaintiffs insufficiently allege compliance with the Government Claims Act[1] as required by California Government Code §

---

[1]    Mgbam refers to the Government Claims Act as the California Tort Claims Act.  (*See, e.g.*, ECF No. 34-1 at 17.)  However, because the Ninth Circuit has adopted the California Supreme Court's practice of referring to the California Tort Claims Act as the Government Claims Act, this Court does so here as well except when quoting the parties' briefing.  *See*

915(a).  (ECF No. 34-1 at 16–18.)  The Court finds neither of these arguments persuasive.

First, in the Court's prior order, the Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims after dismissing all the federal claims.  (ECF No. 29 at 16.)  The Court then dismissed Plaintiffs' claims "without prejudice to bringing these claims in state court." (*Id.*)  This did not prohibit Plaintiffs from amending their state law claims in this action and the Court finds Mgbam's arguments to the contrary unpersuasive.

Second, the Government Claims Act applies to actions for damages against local public entities or public employees acting within the scope of that employee's public employment.  Cal. Gov't Code § 950.2.  "The [Government Claims Act] requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."  *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement."  *State of California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004).  "The timely presentation of a claim under the [Government Claims Act] is not merely a procedural requirement but is an actual 'element of the plaintiff's cause of action.'"  *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) (internal citation omitted).  "In federal court, failure to allege facts which demonstrate or excuse compliance with the California Government Claims Act subjects state law claims to dismissal."  *Voiles v. Reavis*, No. 11-CV-1166 JLS BGS, 2014 WL 5092687, at *7 (S.D. Cal. Oct. 9, 2014) (internal citations omitted).

To present a claim under the Government Claims Act, a claimant may: (1) deliver it to the clerk, secretary, or auditor of the public entity; or (2) mail it to the clerk, secretary, auditor, or governing body at its principal office.  Cal. Gov't Code § 915(a)(1)–(2).  "A plaintiff suing the state or local public entity must allege facts demonstrating either compliance with the claim presentation requirement or an excuse for noncompliance as an essential element of the cause of action."  *Ovando v. Cnty. of L.A.*, 159 Cal. App. 4th 42, 65 (2008) (internal citations omitted).

/ / /

---

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1124 n.6 (9th Cir. 2013) (internal citation omitted).

In opposition, Plaintiffs argue paragraph forty-seven in the FAC clearly meets these requirements.[2] (ECF No. 36 at 14.) Paragraph forty-seven alleges "[o]n May 11, 2022, Plaintiffs served Defendants with their Notice of Tort Claim under the California Tort Claims Act[,]" but "Defendants failed to respond[.]" (ECF No. 30 ¶ 47.) Although a bare legal conclusion that Plaintiffs complied with the Government Claims Act is insufficient, the Complaint contains just slightly more. Plaintiffs provide the date the claim was presented and allege Defendants failed to respond. While subsequent discovery may show otherwise, when drawing all reasonable inferences in Plaintiffs' favor, the Court finds these allegations sufficient at this stage to establish the Government Claims Act prerequisites have been fulfilled. *See, e.g.*, *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1152 (E.D. Cal. 2009) (finding similar allegations sufficient to establish compliance under the Government Claims Act); *cf. G.M. v. Poole*, No. 2:17-CV-02415-TLN-CKD, 2019 WL 4318573, at *6 (E.D. Cal. Sept. 12, 2019) (finding Plaintiffs' failure to include the presentment date made Plaintiffs allegation they had complied with the Government Claims Act insufficient).

Mgbam also argues the state law claims should be dismissed on the following grounds: (1) C.S. cannot state a claim against Mgbam for battery; (2) Plaintiffs cannot state claims for either negligence or negligent supervision against Mgbam; and (3) Mgbam is immune from liability under the Coverdell Act. (ECF No. 34-1 at 16–22.) The Court addresses these remaining arguments in turn.

a)    *Battery*

Under California law, battery occurs when "(1) the defendant touched the plaintiff, or caused the plaintiff to be touched, with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's

---

[2]    Plaintiffs also provide additional details in opposition regarding how they allegedly complied with the Government Claims Act. (ECF No. 36 at 15.) Specifically, Plaintiffs contend they sent a letter via email to the District's previous counsel. (*Id.*) In reply, Mgbam argues Plaintiffs' opposition demonstrates they failed to comply with the Government Claims Act requirements. (ECF No. 45 at 8.) Because the Court finds Plaintiffs have sufficiently alleged compliance with the Government Claims Act in the First Amended Complaint, the Court declines to address this argument at this time.

1   conduct; and (4) a reasonable person in the plaintiff's position would have been offended by the

2   touching." *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 890 (2014) (internal citation omitted).

3           Relying on *Austin B. v. Escondido Union School District*, 149 Cal. App. 4th 860, 871

4   (2007), Mgbam contends C.S. cannot "prove" Mgbam intended to harm C.S. nor that her conduct

5   was unreasonable.  (ECF No. 34-1 at 19.)  In *Austin B.*, the California Court of Appeal held that

6   in a school setting, a teacher may maintain a degree of control over a student, that is "reasonably

7   necessary to maintain order, protect property, or protect the health and safety of pupils, or to

8   maintain proper and appropriate conditions conducive to learning."  149 Cal. App. 4th 860, 874

9   (2007) (internal citation omitted).  The court went on to note that this is "particularly true where .

10  . . the students are autistic children who admittedly need, and in some circumstances desire,

11  touching to calm, guide and control them." *Id.*

12          In opposition, C.S. argues *Austin B.* does not support Mgbam's argument because the facts

13  are distinguishable.  (ECF No. 36 at 16–17.)  Specifically, C.S. argues the FAC does not allege

14  Mgbam applied force to "calm, guide, and control[,]" but rather to discipline by physical restraint.

15  (*Id.* at 17.)  The Court agrees.  In response to C.S.'s behavior in the classroom, Plaintiffs allege

16  Mgbam used enough physical force against C.S. to cause "instant red marks and scratches, and

17  later [] bruising."  (ECF No. 30 ¶ 30.)  Additionally, Plaintiffs allege when C.S. fell to the floor,

18  Mgbam "grabbed him even harder, causing C.S. to twist and turn" and causing his arm to

19  "appear[] to hyperextend[.]"  (*Id.*)  Moreover, C.S. alleges the teacher's aide had previously used

20  one of C.S.'s behavior accommodations to correct C.S.'s actions.  (*Id.* ¶ 24.)  When drawing all

21  reasonable inferences in C.S.'s favor, the Court finds these allegations sufficient at this stage to

22  infer Mgbam intended to harm or offend C.S. and her conduct was unreasonable.  *See, e.g.*, *Ware*

23  *v. Antelope Valley Union High Sch. Dist.*, No. 15-CV-8124-DMG-AJWX, 2016 WL 11518623, at

24  *8 (C.D. Cal. Nov. 15, 2016) (denying motion to dismiss battery claim based on *Austin B.*); *K.C.*

25  *v. Town of Atherton*, No. 24-CV-00507-RFL, 2024 WL 4489444, at *1 (N.D. Cal. Oct. 15, 2024)

26  (noting if the allegations present a plausible claim for battery, "whether a reasonable person

27  would find [Defendant's] contact to be harmful or offensive, and whether [Defendant] in fact

28  acted with intent, are issues not suited for resolution on the pleadings.").  Accordingly, the Court

1   DENIES Mgbam's motion to dismiss the battery claim.

2                       *b)*      *Negligence*

3          Mgbam argues neither C.S.'s parents nor C.S. state a claim for negligence.  (ECF No. 34

4   at 20.)  To state a claim for negligence, a plaintiff must show: (1) the existence of a duty of care;

5   (2) breach of that duty; (3) causation; and (4) damages.  *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465,

6   500 (2001).

7          First, Mgbam contends C.S.'s parents cannot state a claim for negligence because the

8   vague allegation that "Defendants owed Plaintiffs a duty to exercise reasonable care in their

9   interactions with them" is insufficient and unsupported.  (*Id.* (quoting ECF No. 30 ¶ 69.))  In

10  opposition, Plaintiffs do not respond to this argument.  (*See* ECF No. 36 at 17.)  The Court finds

11  C.S.'s parents therefore concede their negligence claim against Mgbam.  *See, e.g.*, *Beecham v.*

12  *Roseville City Sch. Dist.*, No. 2:15-CV-01022-KJM-EFB, 2018 WL 1941670, at *13 (E.D. Cal.

13  Apr. 25, 2018) (finding parents tacitly conceded no special relationship existed between them and

14  their child's teacher and therefore negligence claim could not survive).

15         Second, Mgbam argues C.S. cannot state a claim for negligence, because the claim is

16  contradictory to the battery claim.  (ECF No. 34-1 at 20–21.)  Mgbam cites a secondary source

17  and an Eighth Circuit case to support this argument.  (*Id.*)  In opposition, C.S. does not directly

18  respond to Mgbam's arguments, but instead contends the FAC includes sufficient facts to

19  demonstrate Mgbam was negligent.  (ECF No. 36 at 17.)

20         The Court finds Mgbam's argument to be unpersuasive and insufficiently supported.

21  Courts in this Circuit have routinely allowed plaintiffs to proceed on both negligence and battery

22  claims.  *See, e.g.*, *K.C.*, 2024 WL 4489444, at *1 (denying motion to dismiss both a battery and

23  negligence claim against a school official); *Ware*, 2016 WL 11518623, at *10 (finding Plaintiff

24  sufficiently alleged both a battery and negligence claim against a paraeducator).  Because Mgbam

25  does not provide any additional arguments as to why C.S.'s negligence claim should be

26  dismissed, the Court ends its analysis here.

27         In sum, the Court GRANTS Mgbam's motion to dismiss C.S.'s parents' negligence claim

28  without leave to amend and DENIES Mgbam's motion to dismiss C.S.'s negligence claim.

1

*c)      Negligent Supervision*

2        Mgbam next argues Plaintiffs cannot state a claim against her for negligent supervision

3   because such claims can only be brought against employers.  (ECF No. 34-1 at 21.)  Plaintiffs

4   concede Mgbam cannot be liable for negligent supervision.  (ECF No. 36 at 14 n.1.)

5   Accordingly, the Court GRANTS the motion to dismiss Plaintiffs' negligent supervision claim

6   against Mgbam without leave to amend.

7

*d)      Coverdell Act*

8        Finally, Mgbam argues she is immune from liability under the Paul D. Coverdell Teacher

9   Protection Act of 2001 ("Coverdell Act").  (ECF No. 34-1 at 21–22.)  The Coverdell Act is

10  intended "to provide teachers, principals, and other school professionals the tools they need to

11  undertake reasonable actions to maintain order, discipline, and an appropriate educational

12  environment."  20 U.S.C. § 7942.  Immunity applies if five specific requirements are met,

13  including "the actions of the teacher were carried out in conformity with Federal, State, and local

14  laws . . . in furtherance of efforts to control, discipline, expel, or suspend a student or maintain

15  order or control in the classroom or school."  *Id.* § 7946(a)(2).

16       Mgbam argues she is immune because C.S. alleges Mgbam was acting in her official

17  capacity as an educator to control or discipline a student.  (ECF No. 34-1 at 22.)  Moreover,

18  Mgbam argues the video demonstrates her actions were carried out in conformity with all

19  applicable laws.  (ECF No. 34-1 at 22.)  In opposition, C.S. argues the Coverdell Act does not

20  apply because Mgbam did not act in conformance with Federal, State, and local laws.  (ECF No.

21  36 at 18.)  The Court agrees.  As discussed above, the Court finds C.S. has sufficiently alleged

22  Mgbam violated § 1983 when she allegedly used excessive force against C.S.  Accordingly, the

23  Court finds Coverdell Immunity inapplicable at this stage.

24

*iii.   Punitive Damages*

25       Finally, Mgbam argues there are insufficient allegations to support Plaintiffs' request for

26  punitive damages.  (ECF No. 34-1 at 22.)  Plaintiffs do not respond in opposition.  (*See generally*

27  ECF No. 36.)  The Court finds Plaintiffs have thus abandoned the request for punitive damages.

28  *See, e.g.*, *Crandall v. Teamsters Loc. No. 150*, No. 2:23-CV-03043-KJM-CSK, 2024 WL

1   3889916, at \*5 (E.D. Cal. Aug. 20, 2024) (finding similarly).  Accordingly, the Court GRANTS

2   the motion to dismiss the request for punitive damages as to Mgbam without leave to amend.

3                   C.      District and Officials' Motion to Dismiss

4           The District and Officials also move to dismiss the claims against them.  (ECF No. 35.)

5   First, the District and Tyler argue C.S. fails to state an excessive force claim against them under

6   the Fourth Amendment.  (*Id.* at 14–16.)  Second, the District argues the ADA, the Rehabilitation

7   Act, and Government Code § 11135 claims are all insufficient.  (*Id.* at 17–20.)  Third, the District

8   and Officials argue Plaintiffs' state law claims against them should be dismissed.  (*Id.* at 20–22.)

9   The Court analyzes these arguments in turn.

10                  i.      *Section 1983 Claim against the District and Tyler*

11          The District argues C.S.'s § 1983 claim against it fails as a matter of law because it is not

12  a "person" within the meaning of § 1983.  (ECF No. 35 at 16.)  In opposition, Plaintiffs concede

13  the District cannot be subject to liability under § 1983.  (ECF No. 38 at 14.)  As such, the Court

14  GRANTS the motion to dismiss the § 1983 claim against the District without leave to amend.

15          Tyler, the District's Special Education Director, also argues C.S.'s § 1983 claim should be

16  dismissed against her because there is no vicarious liability under § 1983 and the allegations do

17  not support either a failure to train or a ratification theory of liability.[3]  (ECF No. 35 at 14–16.)  In

18  opposition, C.S. only addresses supervisory liability based on a failure to train theory.  (ECF No.

19  38 at 14.)  Therefore, the Court finds C.S. concedes any argument based on a ratification theory.

20          "Under Section 1983, supervisory officials are not liable for actions of subordinates on

21  any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989) (citing

22  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  However, "[a] supervisor is only

23  liable for constitutional violations of his subordinates if the supervisor participated in or directed

24  the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880

25  F.2d 1040, 1045 (9th Cir. 1989).

26  ───────────────
    [3]      Tyler also argues this claim should be dismissed because there is no constitutional

27  violation to support liability.  (ECF No. 35 at 15.)  However, as discussed above, the Court now
    finds C.S. has sufficiently alleged a constitutional violation.  Therefore, the Court disregards

28  Tyler's argument on this point.

1    C.S. contends the allegations sufficiently establish Tyler's liability because the allegations

2    demonstrate "Tyler knew Mgbam had not been appropriately trained" and "had a propensity to

3    refuse appropriate behavior supports." (ECF No. 38 at 15.) C.S. refers to *Preschooler II*, where

4    the Ninth Circuit determined school officials were liable under a supervisory liability theory. (*Id.*

5    (citing 479 F.3d at 1178).) In *Preschooler II*, the complaint alleged several different incidents to

6    show the school officials were "on notice of the violent and unlawful conduct ongoing in the

7    classroom." 479 F.3d at 1178–79.

8        Here, similar to *Preschooler II*, this Court finds the allegations sufficient to plausibly infer

9    Tyler is liable for Mgbam's actions on a supervisory liability theory. First, Plaintiffs allege the

10   District was on notice that its staff had a history of failing to implement appropriate behavior

11   support accommodations given a Department of Justice complaint against the District that

12   ultimately resolved with the District agreeing to an injunction that required the District to

13   implement various policies and procedures to protect students with disabilities. (ECF No. 30 ¶

14   42–43.) Additionally, Plaintiffs allege a week before the incident, during an IEP meeting at

15   which Tyler was present, Mgbam "indicated she did not agree with certain ways C.S.'s behavior

16   accommodations were being implemented[.]" (*Id.* ¶ 44.) According to Plaintiffs, Mgbam's

17   statements "should have been a red flag to Tyler[.]" (*Id.*) Drawing all reasonable inferences in

18   C.S.'s favor, the Court finds these allegations sufficient to state a supervisory liability claim

19   against Tyler. Accordingly, the Court DENIES the motion to dismiss the § 1983 claim against

20   Tyler.[4]

21           ii.    *ADA, Rehabilitation Act, and California Government Code § 11135*

22                  *Claims against the District*

23       C.S.'s second cause of action is an ADA claim against the District. C.S. alleges the

24   District failed in its responsibilities under the ADA to provide C.S. with reasonable

25   accommodations in the form of behavior support accommodations. (ECF No. 30 ¶ 56.) C.S.

26   _____

27   [4]     In the alternative, the District and Officials appear to argue Tyler is entitled to qualified
     immunity, but aside from a singular sentence, do not develop any substantive arguments on this
28   point. (ECF No. 35 at 2.) As such, the Court declines to address this argument at this time.

1    further alleges the District was aware C.S. needed these accommodations and "was deliberately

2    indifferent to the fact that these accommodations were not provided to C.S." (*Id.* ¶ 57.)

3        C.S.'s third cause of action is a Rehabilitation Act claim against the District. C.S. alleges

4    the District receives federal financial assistance and violated C.S.'s rights under the

5    Rehabilitation Act by "failing to provide C.S. with reasonable accommodations he needed to

6    enjoy meaningful access to the educational services provided[.]" (*Id.* ¶¶ 61, 64.)

7        In the seventh cause of action, Plaintiffs collectively allege the District violated California

8    Government Code § 11135. Plaintiffs allege the District violated California Government Code §

9    11135 by failing to provide "services, programs and activities in a full and equal manner to

10   disabled persons by failing to provide C.S. with the reasonable accommodation he needed to

11   enjoy meaningful access to [] educational services." (*Id.* ¶ 79.)

12       Title II of the ADA and the Rehabilitation Act "both prohibit discrimination on the basis

13   of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)). The legal standards for

14   the ADA and Rehabilitation Act are primarily the same. *Coons v. Sec'y of U.S. Dep't of*

15   *Treasury*, 383 F.3d 879, 884 (9th Cir. 2004); *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728

16   F.3d 982, 992 (9th Cir. 2013) (noting that for a Rehabilitation Act claim, the plaintiff must also

17   prove the relevant program receives federal financial assistance). California Government Code §

18   11135 "is identical to the Rehabilitation Act except the entity must receive State financial

19   assistance rather than Federal financial assistance." *California Found. for Indep. Living Centers*

20   *v. Cnty. of Sacramento*, 142 F. Supp. 3d 1035, 1059 (E.D. Cal. 2015) (internal citation omitted).

21   Accordingly, the Court primarily analyzes Plaintiffs' claims together.

22       Relevant here, a plaintiff bringing suit under section 504 or Title II of the ADA must show

23   that "she was denied "a reasonable accommodation that [she] needs in order to enjoy meaningful

24   access to the benefits of public services[.]" *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,

25   815 F.3d 1195, 1204 (9th Cir. 2016) (internal citation omitted). This can be established by

26   alleging the plaintiff was denied "services that she needed to enjoy meaningful access to the

27   benefits of a public education and that were available as reasonable accommodations." *Id.*

28   / / /

19

1    The District argues these remaining claims should be dismissed because they are barred

2    by a prior settlement agreement.  (ECF No. 35 at 17–18.)  In the alternative, the District argues

3    Plaintiffs have not sufficiently alleged facts to support these claims.  (ECF No. 35 at 18–19.)  The

4    Court addresses these arguments in turn.

5    *a) Settlement Agreement*

6    In the FAC, Plaintiffs allege they filed a Due Process Request ("Request") after the

7    incident with the Office of Administrative Hearings.  (ECF No. 30 ¶ 30.)  In the Request,

8    Plaintiffs "identified numerous violations of Federal and State laws that require a Free and

9    Appropriate Public Education."  (*Id.*)  In the motion to dismiss, the District and Officials contend

10   Plaintiffs and the District later entered into a settlement agreement to resolve the Request.  (ECF

11   No. 35 at 17.)  To support this statement, the District provides a declaration from Katherine A.

12   Alberts and attaches the settlement agreement as an exhibit.  (ECF No. 35-1.)

13   As a threshold matter, the District fails to persuade the Court it is appropriate to consider

14   the settlement agreement attached to the motion to dismiss.  As noted above, "[g]enerally, district

15   courts may not consider material outside the pleadings when assessing the sufficiency of a

16   complaint under Rule 12(b)(6)[.]"  *Khoja*, 899 F.3d at 998 (internal citation omitted).  There are

17   exceptions to this rule, but neither the motion to dismiss nor the attached declaration provide any

18   meaningful discussion or mention at all as to why any exception applies.  (*See generally* ECF No.

19   35 at 17–18; ECF No. 35-1.)  As such, the Court declines to consider the District and Officials'

20   arguments regarding the settlement agreement at this stage and instead turns to their alternative

21   argument regarding the sufficiency of the allegations.

22   *b) Sufficiency of Allegations*

23   The District argues the ADA, Rehabilitation Act, and California Government Code §

24   11135 claims fail because Plaintiffs do not provide any facts showing a reasonable probability

25   that Mgbam's actions were "by reason of C.S.['s] disability" nor any facts to infer that the

26   District's employees actions after the incident were "by reason of C.S.'s disability."  (ECF No. 35

27   at 19.)  In opposition, C.S. contends "Defendants were aware of his need for behavior response

28   accommodations" and failed to ensure the staff working with C.S. "were adequately trained with

1  respect to these necessary behavior support accommodations[.]"  (ECF No. 38 at 17.)  Given this,

2  C.S. argues the District was "deliberately indifferent to the fact that these accommodations were

3  not being implemented in violation of C.S.'s rights under section 504 and the ADA."  (*Id.*)

4      Contrary to the District's argument, the Court finds the FAC does sufficiently allege

5  discrimination by reason of C.S.'s disability.  Here, unlike the original Complaint, Plaintiffs

6  allege that because of C.S.'s disability, he requires behavior response accommodations in order

7  "to enjoy meaningful access to his educational environment."  (ECF No. 30 ¶ 13.)  Plaintiffs

8  further allege the District failed to provide C.S. with the reasonable accommodations he required.

9  (*Id.* ¶¶ 56–57, 61, 64, 79.)  At the pleading stage, these allegations are sufficient to state ADA,

10  Rehabilitation Act and California Government Code § 11135 claims.  *See, e.g.*, *K.C.*, 2024 WL

11  4489444, at *4 (finding similarly).  Accordingly, the District's motion to dismiss these claims is

12  DENIED.  *Cf. A.G.*, 815 F.3d at 1207 (finding summary judgment improper where "a triable

13  factual dispute existed as to whether the services plaintiffs fault the school district for failing to

14  provide were actually reasonable, necessary and available accommodations[.]").

15          *iii.      State Law Claims*

16      At the outset, the District and Officials incorporate by reference Mgbam's arguments

17  regarding the Government Claims Act.  (ECF No. 35 at 20.)  However, as discussed above, the

18  Court finds Plaintiffs have sufficiently alleged compliance with the Government Claims Act.  The

19  District and Officials then argue Plaintiffs fail to state both a claim for negligence and a claim for

20  negligent supervision.  (*Id.* at 20–22.)  The Court examines each argument in turn.

21          *a) Negligence*

22      Plaintiffs allege without specificity, that "Defendants owed Plaintiffs a duty to exercise

23  reasonable care in their interactions with them" and "Defendants failed to exercise reasonable

24  care in their actions[.]"  (ECF No. 30 ¶ 69.)  In moving to dismiss, the District and Officials argue

25  Plaintiffs' allegations "hardly satisf[y] Plaintiffs' duty to properly plead a negligence claim[.]"

26  (ECF No. 35 at 20.)

27      As stated above, to state a claim for negligence, a plaintiff must show: (1) the existence of

28  a duty of care; (2) breach of that duty; (3) causation; and (4) damages.  *Merrill*, 26 Cal. 4th at

1    500.  Additionally, "California law has long imposed on school authorities a duty to supervise at

2    all times the conduct of the children on the school grounds and to enforce those rules and

3    regulations necessary to their protection. . . . Either a total lack of supervision or ineffective

4    supervision may constitute a lack of ordinary care on the part of those responsible for student

5    supervision."  *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 869 (2012)

6    (internal citations and quotation marks omitted).  The Court analyzes the negligence claim as to

7    the Officials — Bettencourt, Holtom, Tyler —— and the District in turn.

8         First, the District and Officials appear to argue the negligence claim should be dismissed

9    against Bettencourt, the Principal of Oakdale Heights Elementary School, and Holtom, the

10   District's superintendent, because the FAC lacks specificity and fails to establish how Bettencourt

11   and Holtom breached a duty of care owed to Plaintiffs.  (ECF No. 35 at 20; ECF No. 46 at 13.)

12   Specifically, the District and Officials contend there are no factual allegations regarding any

13   action or omission by Bettencourt, and Holtom is only alleged to have called C.S.'s parents

14   following the incident.  (ECF No. 35 at 20.)

15        In opposition, Plaintiffs argue all that is required at this stage are sufficient allegations

16   demonstrating Defendants owed a duty to Plaintiffs.  (ECF No. 38 at 21.)  That is, Plaintiffs argue

17   "the remaining liability questions—breach as well as factual and legal causation—are usually

18   questions for the jury."  (*Id.* (quoting *Doe v. Lawndale Elementary Sch. Dist.*, 72 Cal. App. 5th

19   113, 126 (2021).)  While true, in order for these questions to reach the jury, Plaintiffs' claims

20   must survive the motion to dismiss stage, which requires Plaintiffs to allege more than "a

21   formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also*

22   *Iqbal*, 556 U.S. at 678.

23        Here, Plaintiffs' conclusory allegations in the FAC do not pass muster.  Plaintiffs fail to

24   connect how Bettencourt and Holtom's actions or omissions show they breached a duty owed to

25   C.S. and C.S.'s parents.  *See, e.g.*, *I.V. v. Vacaville Unified Sch. Dist.*, No. 2:19-CV-00273-KJM-

26   DB, 2020 WL 820169, at *11 (E.D. Cal. Feb. 19, 2020) (denying negligence claim against the

27   superintendent given the "scant" allegations); *cf. Ware*, 2016 WL 11518623, at *10 (finding a

28   negligence claim sufficiently alleged against superintendent).  Moreover, in opposition, Plaintiffs

1   do not provide any citations to specific allegations in the FAC which would alter this conclusion.

2   Absent further argument, the motion to dismiss the negligence claim against Bettencourt and

3   Holtom is GRANTED with leave to amend.

4        Second, the District and Officials argue the allegations regarding Kimberly Tyler, the

5   District's Special Education Director and Principal, hardly support a claim for negligence.  (ECF

6   No. 35 at 20–21.)  Here, however, the Court finds Plaintiffs have plausibly stated a negligence

7   claim.  Plaintiffs allege Tyler attended a meeting a week before the incident to address C.S.'s IEP

8   and during the meeting Mgbam indicated she "did not agree with certain ways C.S.'s behavior

9   accommodations were being implemented[.]"  (ECF No. 30 ¶ 44.)  Drawing all inferences in

10  Plaintiffs' favor, the Court finds they have sufficiently alleged Tyler breached her duty by failing

11  to investigate Mgbam's statements during the IEP meeting, which proximately caused C.S.'s

12  injury and led to Plaintiffs experiencing emotional stress.[5]  (ECF No. 30 ¶ 44, 45, 69, 70.)

13  Accordingly, the Court DENIES the motion to dismiss the negligence claim against Tyler.

14       Finally, the District and Officials contend the District cannot be held liable for negligence

15  as a matter of law.  (ECF No. 35 at 20.)  The Court disagrees.  As Plaintiffs point out in

16  opposition, "a school district and its employees have a special relationship with the district's

17  pupils, a relationship arising from the mandatory character of school attendance and the

18  comprehensive control over students exercised by school personnel, 'analogous in many ways to

19  the relationship between parents and their children.'"  *Doe v. Lawndale Elementary Sch. Dist.*, 72

20  Cal. App. 5th 113, 125 (2021).  Moreover, courts in this Circuit have found school districts

21  vicariously liable for negligence.  *See, e.g.*, *Wormuth*, 305 F. Supp. 3d at 1133 (finding it possible

22  for the District to be vicariously liable for negligence based on the Principal's negligent actions).

23  Accordingly, because the Court finds Plaintiffs have sufficiently stated a negligence claim against

24  Tyler, Plaintiffs have also sufficiently stated a negligence claim against the District based on a

25  vicarious liability theory.  *See, e.g.*, *Ware*, 2016 WL 11518623, at *11 (finding similarly).

26

---

27  [5]     Here, unlike in Mgbam's motion to dismiss, the District and Officials do not raise any
distinct arguments as to the duty owed to C.S. versus C.S.'s parents.  Therefore, unlike above, the
28  Court does not differentiate between the Plaintiffs.

1              *b)  Negligent Supervision*

2              As for the negligent supervision claim, Plaintiffs allege the District and Officials owed

3     students a "duty of care to take reasonable measures to guard students against harassment and

4     abuse from foreseeable sources" and they were "aware of Mgbam's propensity to abuse

5     students."  (ECF No. 30 ¶¶ 72–73.)  In moving to dismiss, the District and Officials argue

6     Plaintiffs' claim for negligent supervision fails because there are no facts showing the District and

7     Officials knew or should have known that Mgbam was a risk for improper restraint or child

8     abuse.  (ECF No. 35 at 21.)  In opposition, Plaintiffs allege Bettencourt, Holtom, and Tyler had a

9     duty to oversee C.S.'s educational environment and were "aware of Mgbam's propensity to abuse

10    students."  (ECF No. 38 at 21.)  Additionally, Plaintiffs argue the District can be held liable even

11    if the District was not aware of an employee's propensity to abuse students.  (*Id.*)

12            A claim for negligent supervision requires: (1) an employer supervising an employee; (2)

13    who is incompetent or unfit; (3) the employer had reason to believe undue risk of harm would

14    exist because of the employment; and (4) the harm occurs.  *Albert v. Mid-Century Ins. Co.*, 236

15    Cal. App. 4th 1281, 1292 (2015) (internal citation omitted).  "[T]here can be no liability for

16    negligent supervision 'in the absence of knowledge by the principal that the agent or servant was

17    a person who could not be trusted to act properly without being supervised."  *Juarez v. Boy*

18    *Scouts of America, Inc.*, 81 Cal. App. 4th 377, 395 (1st Dist. 2000) (disapproved on other grounds

19    by *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 222 n.9 (2021)).  The Court examines the claims

20    against each of the Officials and the District in turn.

21            First, as to Bettencourt and Holtom, the Court finds Plaintiffs fail to plead sufficient facts

22    to establish a negligent supervision claim.  Aside from conclusory allegations, Plaintiffs provide

23    no facts to indicate either Bettencourt or Holtom had reason to believe undue risk of harm would

24    exist because of Mgbam's employment.  *See, e.g.*, *Ware*, 2016 WL 11518623, at *11 (finding

25    similarly).  Accordingly, the motion to dismiss the negligent supervision claim against

26    Bettencourt and Holtom is GRANTED with leave to amend.

27            Third, regarding Tyler, the Court finds Plaintiffs have sufficiently alleged a negligent

28    supervision claim.  As noted above, Plaintiffs allege Tyler was the District's Special Education

                                                24

1   Director and the Principal.  (ECF No. 30 ¶ 6.)  Additionally, Plaintiffs contend Tyler was present

2   during C.S.'s IEP meeting where Mgbam expressed disagreement about C.S.'s behavior

3   accommodations.  (*Id.* ¶ 44.)  Finally, Plaintiffs allege harm occurred when Mgbam failed to

4   implement C.S.'s behavior accommodations.  (*Id.* ¶ 45.)  Drawing all reasonable inferences in

5   Plaintiffs' favor, the Court finds these allegations are sufficient at this stage to plausibly state a

6   negligent supervision claim.  As such, the motion to dismiss the negligent supervision claim as to

7   Tyler is DENIED.

8         Finally, as to the District, the District and Officials concede that a duty to supervise C.S.

9   and its employees exists.  (ECF No. 46 at 14.)  However, the District and Officials argue that the

10  negligent supervision claim still fails, because Plaintiffs failed to plead the requisite facts to

11  establish that the District breached its duty.  (*Id.*)  However, in viewing the allegations in the light

12  most favorable to Plaintiffs, the Court finds they have sufficiently alleged a negligent supervision

13  claim premised on a vicarious liability theory.  Given this, the motion to dismiss the negligent

14  supervision claim as to the District is DENIED.

15        **IV.    CONCLUSION**

16        For the foregoing reasons, the Court GRANTS in part and DENIES in part Mgbam's

17  Motion to Dismiss (ECF No. 34) and GRANTS in part and DENIES in part the District and

18  Officials' Motion to Dismiss (ECF No. 35) as follows:

19        1.  The motion to dismiss the § 1983 claim against Mgbam, Tyler, and the District (Claim

20            One) is DENIED as to Mgbam and Tyler, and GRANTED as to District without leave

21            to amend;

22        2.  The motion to dismiss the ADA, Rehabilitation Act, and California Government Code

23            § 1135 claims against the District (Claims Two, Three, and Seven) is DENIED;

24        3.  The motion to dismiss C.S.'s battery claim against Mgbam (Claim Four) is DENIED;

25        4.  The motion to dismiss C.S.'s parents' negligence claim against all Defendants (Claim

26            Five) is GRANTED as to Mgbam without leave to amend, GRANTED as to

27            Bettencourt and Holtom with leave to amend, and DENIED as to Tyler and the

28            District;

5. The motion to dismiss C.S.'s negligence claim against all Defendants (Claim Five) is DENIED as to Mgbam, Tyler and the District, but GRANTED as to Bettencourt and Holtom with leave to amend;

6. The motion to dismiss Plaintiffs' negligent supervision claim against all Defendants (Claim Six) is GRANTED without leave to amend as to Mgbam, GRANTED with leave to amend as to Bettencourt and Holtom, and DENIED as to Tyler and the District;

7. The motion to dismiss the request for punitive damages as to Mgbam is GRANTED without leave to amend.

Plaintiffs may file an amended complaint — only to cure the deficiencies stated herein — no later than thirty (30) days after the electronic filing date of this Order. If Plaintiffs file an amended complaint, Defendants shall file any responsive pleading no later than twenty-one (21) days from the filing date of the amended complaint. If Plaintiffs opt not to file an amended complaint, the action will proceed only on the claims not dismissed above, and Defendants shall file their answer no later than twenty-one (21) days from Plaintiffs' deadline for filing an amended complaint.

IT IS SO ORDERED.

Date: March 17, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE